IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ALLEN DALE OWENS,
     Plaintiff,

vs.                             Case No.:  5:05cv228/SPM/EMT

STACEY R. LEAVINS,
     Defendant.
_____/

## ORDER, REPORT AND RECOMMENDATION

Plaintiff initiated this action on October 31, 2005 by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (Doc. 1).  Plaintiff later filed an amended complaint and second amended complaint (Docs. 22, 25).  Leave to proceed in forma pauperis has been granted (Doc. 5).  This cause is now before the court on Defendant's Motion to Dismiss the second amended complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Criminal Procedure, for failure to state a claim upon which relief can be granted (Doc. 37).  Plaintiff has responded in opposition to the motion (Doc. 43).

I.      BACKGROUND

At all times relevant to this action, Plaintiff was an inmate housed at the Holmes Correctional Institution ("HCI") (Doc. 25 at 7).  Plaintiff names as Defendant Stacey R. Leavins, an Assistant Food Services Director at HCI (*id.* at 1–2).[1]  Defendant is an employee of the Aramark corporation working under contract with the Florida Department of Corrections at HCI (*id.* at 7, ¶ 4).

Plaintiff alleges the following facts in support of his second amended complaint (hereafter "complaint").  On March 31, 2005, Plaintiff was assigned to work in food service (*id.* at 7, ¶ 1).  At

---

[1]Plaintiff's original complaint and amended complaint named additional Defendants (*see* Docs. 1, 22). Plaintiff's second amended complaint, however, names only Stacey R. Leavins as a Defendant (*see* Doc. 25 at 1–2). Therefore, the clerk will be ordered to change the style of the case to reflect that Stacey R. Leavins is the only Defendant.

that time, Defendant explained the job assignment duties and safety procedures to Plaintiff (*id.* at 7, ¶ 4).  Plaintiff asked Defendant for her full name, the name of her supervisor, and the address of her company because he "was unfamiliar with her" (*id.* at 7, ¶¶ 6–7).  Defendant asked Plaintiff why he needed this information, and Plaintiff responded that "if I should slip and fall or get seriously burnt by faulty equipment their [sic] may be a possibility that I can sue and I would know who to contact in case of an accident while assigned in food service" (*id.* at 7, ¶ 8).  Defendant left the room and reported Plaintiff's comment to Lieutenant Peters, the officer in charge and an HCI guard (*see id.* at 7, ¶ 9).  Plaintiff alleges that Defendant misrepresented what he said; specifically, Plaintiff claims that Defendant told Lieutenant Peters that he (Plaintiff) said "if I should slip and fall I'm [sic] going to sue you [(Defendant)] and Aramark, but I'm [sic] going to sue you [(Defendant)] first" (*id.* at 7, ¶ 10).  Lieutenant Peters then placed Plaintiff in administrative confinement "for a spoken threat" (*id.* at 7, ¶ 11).  Plaintiff alleges that Defendant willfully falsified her statement to Lieutenant Peters in retaliation for Plaintiff asking her a question concerning her name and her company's name and address (*id.* at 9, ¶ 12).

On April 7, 2005, a disciplinary team found Plaintiff guilty of making a spoken threat, and Plaintiff was sentenced to thirty days in disciplinary confinement (*see id.* at 9, ¶ 13).  Plaintiff appealed the decision to the warden and the Secretary of the Florida Department of Corrections but was denied relief (*id.* at 9, ¶¶ 14–15).

Plaintiff alleges his First Amendment rights were violated when he was placed in disciplinary confinement because he asked Defendant a question and because Defendant misrepresented what Plaintiff actually said to her when she reported his comment (Doc. 25 at 10–11).  As relief, Plaintiff seeks an expungement of his disciplinary record, transfer (presumably to another correctional institution), costs and fees, and any other relief deemed appropriate by the court (*see id.* at 10).

II.     STANDARD OF REVIEW

It is well established that a court should not grant a motion to dismiss under Rule 12(b)(6) unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45–46 (1957).  To state a claim for relief, Rule 8(a)(2) of the Federal Rules of Civil procedure requires only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."

On a motion to dismiss, the allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984); Castro v. Sec'y of Homeland Sec., 472 F.3d 1334, 1336 (11th Cir. 2006) (citing Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003)).  "A court may dismiss a complaint [on a motion to dismiss] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Id. (citing Conley v. Gibson, 355 U.S. 41, 45–46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)).  Additionally, it is well settled that the allegations of a pro se complaint, "however inartfully pleaded" are held "to less stringent standards than formal pleadings drafted by lawyers . . . ."  Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 595, 30 L. Ed. 2d 652 (1972).  Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law.  See Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

III.    DISCUSSION AND ANALYSIS

Defendant moves this court to dismiss Plaintiff's complaint because Defendant did not impose any confinement or take any other disciplinary action against Plaintiff (Doc. 37 at 3). Defendant also argues that Plaintiff is not entitled to relief because Defendant was not acting under color of state law, did not violate Plaintiff's First Amendment rights, or if she did, is entitled to qualified immunity (id. at 4–6).

It is well recognized that in any section 1983 action, the initial inquiry must focus on whether two essential elements are present:

1.  whether the conduct complained of was committed by a person acting under color of state law; and

2.   whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

Parratt v. Taylor, 451 U.S. 527, 535, 101 S. Ct. 1908, 1912, 68 L. Ed. 2d 420, 428 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); Duke v. Cleland, 5 F.3d 1399, 1403 (11th Cir. 1993) (citing Parratt).

In the instant case, the court need not determine whether Defendant was acting under color of state law because it is apparent that Plaintiff has failed to satisfy the second prong of the <u>Parratt</u> standard.

Initially, regarding Defendant's assertion that she did not personally take any disciplinary action against Plaintiff and therefore cannot be held liable, the court notes that Plaintiff appears to seek to hold her liable because she misrepresented Plaintiff's statements, and Plaintiff was disciplined because of her misrepresentation. In other words, had Defendant accurately reported Plaintiff's comment, he would not have been disciplined because his true comment did not constitute a "spoken threat." However, to the extent Plaintiff alleges Defendant caused Lieutenant Peters to initiate disciplinary proceedings against Plaintiff on the basis of a false report, Plaintiff has not stated a constitutional violation. *See* <u>Rodgers v. Singletary</u>, 142 F.3d 1252, 1253 (11th Cir. 1998) (per curium) (holding that the filing of false disciplinary charges against an inmate does not alone amount to a constitutional violation); <u>Sprouse v. Babcock</u>, 870 F.2d 450, 452 (8th Cir. 1989) (same); <u>Freeman v. Rideout</u>, 808 F.2d 949, 951–53 (2d Cir. 1986). This is primarily because the Constitution requires only that the inmate be afforded due process at the institutional hearing, which represents his opportunity to expose any such falsities or inaccuracies. <u>Freeman</u>, 808 F.2d at 952; *see also* <u>Wolff v. McDonnell</u>, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). It is not disputed that Plaintiff was afforded such a process in this case but was denied relief (*see* Doc. 25 at 9, ¶¶ 14–15).

Additionally, Plaintiff has failed to state a violation of the First Amendment. Plaintiff contends that his statement, "if I should slip and fall or get seriously burnt by faulty equipment their [sic] may be a possibility that I can sue and I would know who to contact in case of an accident while assigned in food service," was speech protected by the First Amendment (Doc. 1 at 11). Plaintiff argues that the disciplinary team's determination that this statement was a "spoken threat" does not adequately take into account his First Amendment right to inquire about his safety (*id.*). Further, Plaintiff argues that this question could not be considered a threat (*id.*).

The court notes, however, Plaintiff has only provided an excerpt of his alleged statement to Defendant (*see id.* at 7, 11). Plaintiff also states that he asked Defendant "for her full name, the name of her supervisor and the address of her company" (*id.* at 7, ¶ 6). Plaintiff alleges that he did

this because he was not familiar with Defendant (*id.* at 7, ¶ 7).  Then, only after making these preliminary statements, Plaintiff alleges that he told Defendant he needed this information because he may "slip and fall or get seriously burnt by faulty equipment [and] their [sic] may be a possibility that I can sue and I would know who to contact in case of an accident while assigned in food service" (*id.* at 7, ¶ 8).  Thus, Plaintiff's statement cannot be construed as an inquiry relating only to his safety, as Plaintiff was not inquiring about safety procedures or the proper operation of kitchen appliances; his question concerned the threat of a future lawsuit.

A prison inmate is entitled to his First Amendment right to freedom of expression so long as it is not inconsistent with his status as a prisoner and does not adversely affect a legitimate state interest.  *See* Pell v. Procunier, 417 U.S. 817, 94 S. Ct. 2800, 2806–07, 41 L. Ed. 2d 495 (1974) (upholding regulation banning face-to-face media interviews with specific prisoners because the First Amendment does not give the media access to prisons given to ordinary citizens); Procunier v. Martinez, 416 U.S. 396, 94 S. Ct. 1800, 1811, 40 L. Ed. 2d 224 (1974) (prison regulation governing outgoing mail would be upheld if regulation furthered substantial governmental interest in security, order, and/or rehabilitation, and if regulation was no greater than necessary to further legitimate governmental interests involved), *overruled in part*, Thornburgh v. Abbott, 490 U.S. 401, 109 S. Ct. 1874, 1881–82, 104 L. Ed. 2d 459 (1989) (prison regulation governing receipt of subscription publications by federal inmates would be upheld if reasonably related to legitimate penological interests).  "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration."  Jones v. N.C. Prisoners' Union, 433 U.S. 119, 125 (1977); *see also* Wolff, 418 U.S. at 555.

The Supreme Court has held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  Turner v. Safley, 482 U.S. 78, 107 S. Ct. 2254, 2261, 96 L. Ed. 2d 64 (1987).  The Supreme Court has explained that "such a standard is necessary if 'prison administrators . . . , and not the courts, [are] to make the difficult judgments concerning institutional operations.' "  *Id.* (quoting Jones v. N.C. Prisoners' Labor Union, 433 U.S. 119, 97 S. Ct. 2532, 2539, 53 L. Ed. 2d 629 (1977)).  Prison administrators are accorded "wide-ranging deference in the adoption and execution

of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).  In Bell, the Supreme Court explained that a penal "institution must be permitted to use reasonable means to insure that its legitimate interests in security are safeguarded  . . . [and courts] should not second-guess the expert administrators on matters on which they are better informed . . . [for] [c]oncern with minutia of prison administration can only detract the court from detached consideration of the question presented to it: does the practice or condition violate the Constitution?"  Id. at 544, 99 S.Ct. 1861.  This standard is applicable to both determining whether a regulation or a prison authority's response to a plaintiff's action is constitutionally permissible. See Jackson v. Cain, 864 F.2d 1235, 1248 (5th Cir. 1989).

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (citing Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir. 1989)). " 'To state a [F]irst [A]mendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right.' " Id. (quoting Thomas, 880 F.2d at 1242).  Rather, " '[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech.' " Id. (quoting Thomas, 880 F.2d at 1242). Essentially, a retaliation claim has three elements: (1) plaintiff's speech or act was constitutionally protected; (2) an adverse action was taken against plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two; that is, the adverse action was motivated at least in part by plaintiff's protected speech or act.  Bennett v. Hendrix, 423 F.3d 1247, 1250–55 (11th Cir. 2005); see also Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).

In the instant case, there is no question that restrictions preventing inmates from threatening other inmates or prison staff are related to legitimate prison interests and therefore are permitted under Turner.  See, e.g., Nicholas v. Garo, No. 95-CV-379H, 1997 WL 255291, at *3 (W.D.N.Y. Apr. 7, 1997) ("a restriction preventing inmates from threatening other inmates or the facility's staff passes constitutional muster . . . [because it is] related to legitimate penological interests, as required

by <u>Turner</u>.").[2]  Allowing prisoners to threaten guards, prison staff, or other inmates in any manner is clearly deleterious to prison order.  As other courts have noted, "the continued smooth operation of a correctional facility is largely dependent upon inmate recognition of the guards' authority."  *See* <u>Nicholas</u>, 1997 WL 255291, at *3 (citing <u>Bradley v. Hall</u>, 911 F. Supp. 446 (D. Or. 1994) (prison regulation prohibiting language showing disrespect to guards is facially constitutional); <u>Jones v. Nelson</u>, 861 F. Supp. 983 (D. Kan. 1994) (inmate does not have the right to call officer a "bitch"); <u>Clemmons v. Butler</u>, No. 91-3( )1 0-S, 1991 WL 17696 (D. Kan. Jan. 16, 1991) (prison regulation forbidding disrespect to officers does not violate first amendment)).

Accordingly, if Plaintiff's statement to Defendant constituted disrespectful language or a threat, Plaintiff cannot state a First Amendment claim because he has not engaged in any constitutionally protected expression.  *See* <u>Bennett</u> 423 F.3d at 1250–55; <u>Farrow</u>, 320 F.3d 1248; *see also* <u>Thaddeus-X</u>, 175 F.3d at 394.  Prison officials are in a better position to determine the nature of Plaintiff's statement and courts "should not second-guess the expert administrators on matters on which they are better informed."  <u>Bell</u>, 441 U.S. at 544.  The court should consider only "the question presented to it: does the practice or condition violate the Constitution?"  *Id.* at 544.  In this case, the court has already determined that a regulation or an action prohibiting inmates from using disrespectful language or making threats directed toward other inmates, guards, or prison staff are constitutionally permissible.  Furthermore, the court cannot conclude that the disciplinary team

---

[2]Furthermore, while recognizing that Plaintiff's comment in the instant case was not a threat to cause physical harm, the court notes that a number of courts have removed threats or threatening language from First Amendment protection by assigning threats to a category of speech not protected by the First Amendment.  <u>Watts v. United States</u>, 394 U.S. 705, 707 (1969) ("What is a threat must be distinguished from what is constitutionally protected speech."); <u>United States v. Mitchell</u>, 463 F.2d 187, 191 (8th Cir. 1972) (violent threats in furtherance of scheme to extort money "are devoid of constitutional protection"); <u>Shackelford v. Shirley</u>, 948 F.2d 935, 938–39 (5th Cir. 1991) (inmate convicted under telephone harassment statute not entitled to habeas relief because "threats made with the specific intent to injure and focused on a particular individual easily fall into the category of speech deserving no first amendment protection."); <u>United States v. Orozco-Santillan</u>, 903 F.2d 1262, 1265–66 (9th Cir. 1990) (in appeal of conviction for threatening a law enforcement officer court noted that "[a] 'true' threat, where a reasonable person will believe he will be subjected to physical violence upon his person, is unprotected by the first amendment."); <u>United States v. Khorrami</u>, 895 F.2d 1186, 1191–93 (7th Cir. 1990) (in appeal of conviction for mailing threatening communications and making threatening telephone calls court found that letters and anti-Semitic "wanted poster" were true threats and outside of constitutional protections for speech); <u>United States v. Kelner</u>, 534 F.2d 1020, 1025–27 (2nd Cir. 1976) (threat to kill Yassar Arafat was not protected speech under <u>Watts</u>); <u>Masson v. Slaton</u>, 320 F. Supp. 669, 672 (N.D. Ga. 1970) ("The right to free speech . . . entitles an individual to advocate certain ideas regardless of their popularity, but does not extend to the threatening of terror, inciting of riots, or placing another's life or property in danger").

was unreasonable in determining that Plaintiff's statement requesting Defendant's name and contact information, prior to informing her that he would sue if he was injured while working in food service, was a threat.[3]  The court further notes, that even if Plaintiff's statement was not a "threat," it nevertheless was disrespectful, as Plaintiff's statement indicated that Defendant would be sued if Plaintiff was injured in the kitchen — regardless of whether Defendant was legally accountable for Plaintiff's injury.   Thus, Plaintiff cannot establish under the facts alleged that he engaged in protected speech or conduct, and his claim is subject to dismissal.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Stacey R. Leavins is the only Defendant.

And it is respectfully **RECOMMENDED**:

That Defendant's Motion to Dismiss (Doc. 37) be **GRANTED**.

At Pensacola, Florida, this 17th day of April 2007.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[3]The Nicholas court reached a similar conclusion:

Given the legitimate penological interest in maintaining security and order, the decision as to whether a particular statement is a "threat" is best left, as it was in the present case, to the hearing process. It is at that point that the context and meaning of the utterance can be properly assessed. If an inmate is charged mistakenly or improperly under the regulation, as was determined to be the case with this plaintiff, it is a matter to be rectified through the administrative process.

Nicholas, 1991 WL 255291, at *4 (footnote omitted).

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**